**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| JOHN MYERS, Individually and on Behalf of All Others Similarly Situated,    X )<br>            )<br>       Plaintiff,        )<br>            )<br>      v.              )<br>            )<br>ADESTO TECHNOLOGIES CORPORATION, NARBEH DERHACOBIAN, NELSON CHAN, HERVÉ FAGES, FRANCIS LEE, KEVIN PALATNIK, SUSAN UTHAYAKUMAR, AZARA ACQUISITION CORP., and DIALOG SEMICONDUCTOR PLC,        )<br>            )<br>       Defendants,       ) | Civil Action No. _____<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>**JURY TRIAL DEMAND** |

Plaintiff John Myers ("Plaintiff"), individually and on behalf of all others similarly situated, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

## NATURE OF THE ACTION

1. Plaintiff brings this class action on behalf of the public stockholders of Adesto Technologies Corporation ("Adesto" or the "Company") against Adesto's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, arising out of the Board's attempt to sell the Company to Dialog Semiconductor plc through its wholly-owned subsidiary, Azara Acquisition Corp. (collectively, "Dialog").

2.      Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading preliminary proxy statement (the "Proxy") to be filed with the United States Securities and Exchange Commission ("SEC") on March 16, 2020. The Proxy recommends that Adesto shareholders vote in favor of a proposed transaction (the "Proposed Transaction") whereby Adesto is acquired by Dialog. The Proposed Transaction was first disclosed on February 20, 2020, when Adesto and Dialog announced that they had entered into a definitive merger agreement (the "Merger Agreement"), pursuant to which Dialog will acquire all of the outstanding shares of common stock of Adesto for $12.55 per share (the "Merger Consideration"). The deal is valued at approximately $500 million and is expected to close in the third quarter of 2020.

3.      The Proxy is materially incomplete and contains misleading representations and information in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy contains materially incomplete and misleading information concerning the sales process, financial projections prepared by Adesto management, and the financial analyses conducted by Cowen and Company, LLC ("Cowen"), Adesto's financial advisor.

4.      For these reasons, and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disseminated to Adesto's shareholders. In the event the Proposed Transaction is consummated without the material omissions referenced below being remedied, Plaintiff seeks to recover damages resulting from the Defendants' violations.

**PARTIES**

5.      Plaintiff is, and has been at all relevant times, the owner of shares of common stock of Adesto.

6.       Defendant Adesto is a corporation organized and existing under the laws of the State of Delaware. The Company's principal executive offices are located at 3600 Peterson Way, Santa Clara, California 95054. Adesto common stock trades on the NASDAQ under the ticker symbol "IOTS."

7.       Defendant Narbeh Derhacobian ("Derhacobian") has been President, Chief Executive Officer, and a director of the Company since 2006.

8.       Defendant Nelson Chan ("Chan") has been a director of the Company since 2010, lead independent director since 2015, and Chairman of the Board since 2017.

9.       Defendant Hervé Fages ("Fages") has been a director of the Company since July 26, 2019.

10.       Defendant Francis Lee ("Lee") has been a director of the Company since 2015.

11.       Defendant Kevin Palatnik ("Palatnik") has been a director of the Company since 2015.

12.       Defendant Susan Uthayakumar ("Uthayakumar") has been a director of the Company since July 26, 2019.

13.       Defendants Derhacobian, Chan, Fages Lee, Palatnik and Uthayakumar are collectively referred to herein as the "Board."

14.       Defendant Dialog Semiconductor plc is a company incorporated in England and Wales. Dialog Semiconductor plc's headquarters are located at 100 Longwater Avenue, Green Park, Reading RG2 6GP, United Kingdom.

15.       Defendant Azara Acquisition Corp. is a Delaware corporation and a wholly-owned subsidiary of Dialog Semiconductor plc.

## JURISDICTION AND VENUE

16.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

17.     Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

18.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) a significant amount of the conduct at issue took place and had an effect in this District; and (ii) Adesto is incorporated in this District.

## CLASS ACTION ALLEGATIONS

19.     Plaintiff brings this action on his own behalf and as a class action on behalf of all owners of Adesto common stock and their successors in interest and/or their transferees, except Defendants and any person, firm, trust, corporation or other entity related to or affiliated with the Defendants (the "Class").

20.     This action is properly maintainable as a class action for the following reasons:

(a)     The Class is so numerous that joinder of all members is impracticable. As of February 14, 2020, Adesto had approximately 30.5 million shares outstanding.

(b)     Questions of law and fact are common to the Class, including, inter alia, the following:

4

(i)  Whether Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

(ii)  Whether the Individual Defendants have violated Section 20(a) of the Exchange Act;

(iii)  Whether Plaintiff and other members of the Class would suffer irreparable injury if Defendants fail to disclose the material information referenced herein and the Proposed Transaction is consummated as presently anticipated; and

(iv)  Whether the Class is entitled to injunctive relief or damages as a result of Individual Defendants' wrongful conduct.

(c)  Plaintiff is committed to prosecuting this action, is an adequate representative of the Class, and has retained competent counsel experienced in litigation of this nature.

(d)  Plaintiff's claims are typical of those of the other members of the Class.

(e)  Plaintiff has no interests that are adverse to the Class.

(f)  The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications for individual members of the Class and of establishing incompatible standards of conduct for the party opposing the Class.

(g)  Conflicting adjudications for individual members of the Class might as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

(h)    Plaintiff anticipates that there will be no difficulty in the management of this litigation. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

SUBSTANTIVE ALLEGATIONS

A.  **Background of the Company and the Proposed Transaction**

21.    Adesto was founded in 2006 and focused on designing application-specific non-volatile memory products. Such products store critical programs and data and control how systems boot. Now, Adesto designs non-volatile memory products, edge devices and edge gateways, and application specific integrated circuits. All of Adesto's products are designed specifically for "Internet of Things" devices.

22.    The Company has seen significant growth in the past few years. Net revenues have increased 110% from $56.1 million in 2017 to $118.1 million in 2019. Gross profits grew from $27.4 million in 2017 to $56.7 million in 2019. Despite this growth, on February 20, 2020, the Company entered into the Merger Agreement with Dialog.

23.    According to the press release issued on February 20, 2020 announcing the Proposed Transaction:

**Dialog Semiconductor to Acquire Adesto Technologies, Broadening Presence in the Industrial Internet of Things Market (IIoT)**

*Adds differentiated cloud-connected solutions driving Industry 4.0 adoption*

*Diversifies customer base adding industrial sales channel*

*Expects to be EPS accretive in the first calendar year after close*

*Annual cost synergies of approximately $20 million expected, in addition to considerable revenue synergies*

London, February 20, 2020 – Dialog Semiconductor plc (XETRA:DLG), a leading provider of power management, charging, AC/DC power conversion, Wi-Fi and Bluetooth® low energy technology, and Adesto Technologies Corporation

6

("Adesto") (NASDAQ:IOTS), a leading provider of innovative custom integrated circuits (ICs) and embedded systems for the Industrial Internet of Things (IIoT) market, today announced they have signed a definitive agreement for Dialog to acquire all outstanding shares of Adesto.

Adesto accelerates Dialog's expansion into the growing IIoT market that enables smart buildings and industrial automation (Industry 4.0), seamlessly driving cloud connectivity. Headquartered in Santa Clara, California, Adesto has approximately 270 employees and an established portfolio of industrial solutions for smart building automation that fully complements Dialog's manufacturing automation products. Adesto's solutions are sold across the industrial, consumer, medical, and communications markets.

"This acquisition substantially enhances our position in the Industrial IoT market," said Jalal Bagherli, CEO of Dialog. "Adesto's established strength in connectivity solutions and highly optimized products for building and industrial automation perfectly complements and adds scale to our Industrial IoT portfolio from the recently acquired Creative Chips. Adesto's deep customer relationships, comprehensive system expertise, and proprietary technology will deliver enhanced value for Dialog customers."

"Together with Dialog, we are positioned to create unique Industrial IoT solutions through the integration of our best-in-class technologies for today's increasingly connected world," added Adesto's CEO, Narbeh Derhacobian. "We are extremely pleased to join Dialog to bring more value to our combined customer base."

Benefits of Transaction

Bringing Dialog and Adesto together creates a complementary product portfolio for servicing a broad customer base in growth segments of the industrial market and enables cross-selling.

The combination:

- Scales Dialog's IIoT sector capabilities by combining industrial connectivity, smart metering and building automation solutions, and access to more than 5,000 customers, the majority of which are new for Dialog

- Complements Adesto's industrial wired connectivity portfolio with Dialog's wireless portfolio (BLE, Wi-Fi) for smart building and industrial applications. Cloud-connectivity adds further differentiation to Dialog's existing Industrial solutions

- Enables full system solutions for wearables, hearables, and other IoT applications by combining Adesto's low-power specialty memory products with Dialog's BLE & Wi-Fi connectivity and True Wireless Stereo (TWS) Audio ICs

- Unlocks future growth in the Automotive market by qualifying Adesto's specialty memory products by leveraging Dialog's established Automotive production and test flow. Additionally, these products address the emerging, fast-growing Artificial Intelligence (AI) segment

- Adds engineering and design scale to expand Dialog's existing custom IC business making Dialog one of the largest custom analog mixed-signal semiconductor providers

Transaction Structure and Terms

Dialog will acquire Adesto for $12.55 per share in cash, or for approximately $500 million enterprise value. The deal will be funded from Dialog's balance sheet.

The transaction is expected to be EPS accretive[1] for Dialog within the first calendar year following close. Dialog expects annual cost synergies of approximately $20 million within the first calendar year of close across the combined company. Dialog also anticipates considerable additional revenue synergies given the complementary nature of the product portfolios and technology. Adesto expects to report FY 2019 revenue of approximately $118 million and continued revenue growth is anticipated over the next few years.

The transaction is subject to certain regulatory approvals and customary closing conditions and is expected to close in the third quarter of 2020.

The Board of Directors of Adesto has unanimously approved the transaction and recommends that Adesto stockholders vote in favor of the transaction, and directors and executive officers of Adesto have agreed to vote their shares in favor of the transaction.

**B.  The Preclusive Deal Protection Devices**

24.     As part of the Merger Agreement, Defendants agreed to certain preclusive deal protection devices that ensure that no competing offers for the Company will emerge.

25.     By way of example, Section 4.3(a) of the Merger Agreement includes a "no solicitation" provision barring the Company from soliciting or encouraging the submission of an acquisition proposal. Section 4.3(d) demands that the Company cease and terminate all solicitations, discussions or negotiations with any party concerning an acquisition proposal.

26.     Despite already locking up the Proposed Transaction by agreeing not to solicit alternative bids, the Board consented to additional provisions in the Merger Agreement that further guarantee the Company's only suitor will be Dialog. For example, pursuant to Section 4.3(c) of the Merger Agreement, the Company must notify Dialog of any offer, indication of interest, or request for information made by an unsolicited bidder. That includes the identity of any party making a proposal and the material terms of that proposal. Thereafter, should the Board determine that the unsolicited offer is superior, Section 5.2(d) requires that the Board grant Dialog four (4) business days to negotiate the terms of the Merger Agreement to render the superior proposal no longer superior. In other words, the Merger Agreement gives Dialog access to any rival bidder's information and allows Dialog a free right to top any superior offer. Accordingly, no rival bidder is likely to emerge and act as a stalking horse for Adesto, because the Merger Agreement unfairly assures that any "auction" will favor Dialog and allow Dialog to piggy-back upon the due diligence of the foreclosed second bidder.

27.     In addition, pursuant to Section 8.3(d) of the Merger Agreement, Adesto must pay Dialog a termination fee of $15.7 million if the Company decides to pursue another offer, thereby essentially requiring that the alternate bidder agree to pay a naked premium for the right to provide the shareholders with a superior offer.

28.     Ultimately, these preclusive deal protection provisions restrain the Company's ability to solicit or engage in negotiations with any third party regarding a proposal to acquire all or a significant interest in the Company. The circumstances under which the Board may respond to an unsolicited written bona fide proposal for an alternative acquisition that constitutes or would reasonably be expected to constitute a superior proposal are too narrowly circumscribed to provide an effective "fiduciary out" under the circumstances.

### C.  The Materially Incomplete and Misleading Proxy

29.    The Individual Defendants must disclose all material information regarding the Proposed Transaction to Adesto stockholders so that they can make a fully informed decision whether to vote in favor of the Proposed Transaction.

30.    Defendants filed the Proxy with the SEC. The purpose of the Proxy is, *inter alia*, to provide the Company's stockholders with all material information necessary for them to make an informed decision on whether to vote their shares in favor of the Proposed Transaction. However, significant and material facts were not provided to Plaintiff and the Class. Without such information, Adesto shareholders cannot make a fully informed decision concerning whether or not to vote in favor of the Proposed Transaction.

*Materially Misleading Statements/Omissions Regarding the Management-Prepared Financial Forecasts*

31.    The Proxy discloses management-prepared financial projections for the Company which are materially misleading. The Proxy indicates that in connection with the rendering of Cowen's fairness opinion, Cowen reviewed "certain internal financial analyses, financial forecasts, reports and other information concerning Adesto prepared by Adesto management." Accordingly, the Proxy should have, but failed to, provide certain information in the projections that Adesto's management provided to the Board and Cowen.

32.    Notably, Defendants failed to disclose the specific stock-based compensation and non-recurring items. Additionally, the Proxy fails to disclose the NOL carryforward balances (both federal and state) and the projected utilization of the NOLs. The omitted information is necessary for Adesto stockholders to make an informed decision on whether to vote in favor of the Proposed Transaction.

*Materially Incomplete and Misleading Disclosures Concerning Cowen's Financial Analyses*

33.     The omissions in the Company's financial projections makes the disclosures concerning Cowen's financial analyses false and misleading. With respect to the Discounted Cash Flow ("DCF") Analysis, the discount rates appear high, which would lead to lower indicated values. Without the NOL carryforward balances and projected utilization of the NOLs, investors cannot determine if the present value of the NOLs is too low.

34.     Furthermore, concerning the DCF Analysis, the Proxy fails to disclose: (i) the terminal values of Adesto; and (ii) the individual inputs and assumptions underlying the discount rates of 13.5% to 15.5% and the range of perpetuity growth rates of 8.3% to 11.0%.

35.     Additionally, the Proxy fails to disclose the basis for Cowen not receiving the sensitivity projections from the Company for use in its analyses, given that such analyses were provided to Dialog.

36.     Finally, with respect to Cowen's Analysis of Selected Public Traded Companies and Analysis of Selected Transactions, the Proxy fails to disclose the individual multiples and metrics for the companies and transactions observed by Cowen in each analysis.

*Materially Incomplete and Misleading Disclosures Concerning the Flawed Process*

37.     The Proxy also fails to disclose material information concerning the sales process that led to the Proposed Transaction. For example, the Proxy notes that in early 2019, Defendant Derhacobian and other Adesto executives held discussions with Dialog executives on potential collaboration and cooperation between the two companies. However, discussions in April, May and June 2019 had no purpose ascribed to them, and approximately one week after the discussions on June 19, 2019, Dialog made an indication of interest to acquire Adesto. The Proxy does not

11

state the purpose of the discussions between Dialog and Adesto in April, May and June 2019, or whether any potential transaction was a part of those discussions.

38.     In response to Dialog's proposal of June 27, 2019, the Board discussed Adesto's valuation and determined that the proposal undervalued the Company. However, the Proxy does not disclose on what the Board based Adesto's valuation, and whether and/or how that valuation was impacted by the financial projections prepared by Adesto's management after the December 28, 2019 Board meeting.

39.     Dialog submitted to the Board a revised indication of interest on July 9, 2019, which the Board discussed on August 2, 2019. The Proxy does not disclose what actions or discussions took place internally at Adesto or between Adesto and Dialog in the weeks between the proposal and the August 2 Board meeting. The Proxy also fails to disclose what decisions, if any, the Board made in connection with that proposal. Indeed, the Proxy provides a short description of the meeting and immediately thereafter describes a meeting between Defendant Derhacobian and a Dialog executive on December 2, 2019. The Proxy fails to disclose any internal discussions or actions concerning a transaction with Dialog in the months between the August 2, 2019 Board meeting and the December 2, 2019 meeting, nor any actions or discussions between the companies during that time period.

40.     On December 28, 2019, the Board met to discuss a proposal sent by Dialog on December 11, 2019. At that meeting, the Board discussed Adesto management's concern that the Company's fourth quarter financial results would fall short of the guidance provided in the previous quarter, and that would cause Adesto's stock price to decrease, which would make it more difficult to raise capital. That was the basis for the Board agreeing to a transaction with Dialog. While a decrease in stock price might make raising capital more difficult, there is nothing in the

12

Proxy to indicate that Adesto needed a loan or a line of credit, or was planning to offer more stock or notes to the market. The Proxy fails to provide more information about how failing to meet guidance for one quarter's financial results would have that negative of an impact on the Company.

41.   On January 7, 2020, Adesto management met with representatives of Party A to review and discuss Adesto's business, including its financial projections. The Proxy does not disclose whether Party A received the same projections as Dialog received, and whether Party A received and reviewed the sensitivity projections.

42.   Cowen provided the Board with its preliminary financial analyses in various Board meetings throughout the process, yet the Proxy does not disclose these analyses. This includes the preliminary financial analysis provided to the Board on January 31, 2020; the preliminary financial analysis provided to the Board on February 17, 2020; and the preliminary financial analysis provided to the Board on February 19, 2020.

43.   This information is necessary to provide Company stockholders a complete and accurate picture of the sales process and its fairness. Without this information, stockholders were not fully informed as to the defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process. And without all material information, Adesto stockholders are unable to make a fully informed decision in connection with the Proposed Transaction and face irreparable harm, warranting the injunctive relief sought herein.

44.   In addition, the Individual Defendants knew or recklessly disregarded that the Proxy omits the material information concerning the Proposed Transaction and contains the materially incomplete and misleading information discussed above.

45.   Specifically, the Individual Defendants undoubtedly reviewed the contents of the Proxy before it was filed with the SEC. Indeed, as directors of the Company, they were required

13

to do so. The Individual Defendants thus knew or recklessly disregarded that the Proxy omits the material information referenced above and contains the incomplete and misleading information referenced above.

46.    Further, the Proxy indicates that on February 19, 2020, Cowen reviewed with the Board its financial analysis of the Merger Consideration and delivered to the Board an oral opinion, which was confirmed by delivery of a written opinion of the same date, to the effect that the Merger Consideration was fair, from a financial point of view, to Adesto shareholders. Accordingly, the Individual Defendants undoubtedly reviewed or were presented with the material information concerning Cowen's financial analyses which has been omitted from the Proxy, and thus knew or should have known that such information has been omitted.

47.    Plaintiff and the other members of the Class are immediately threatened by the wrongs complained of herein, and lack an adequate remedy at law. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that the Company's shareholders will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

## COUNT I

**On Behalf of Plaintiff and the Class Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9**

48.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

49.    Defendants have filed the Proxy with the SEC with the intention of soliciting Adesto shareholder support for the Proposed Transaction. Each of the Individual Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide the material information referenced above.

14

50.     In so doing, Defendants made materially incomplete and misleading statements and/or omitted material information necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors of Adesto, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).

51.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that such communications with shareholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

52.     Specifically, and as detailed above, the Proxy violates Section 14(a) and Rule 14a-9 because it omits material facts concerning: (i) management's financial projections; (ii) the value of Adesto shares and the financial analyses performed by Cowen in support of its fairness opinion; and (iii) the sales process.

53.     Moreover, in the exercise of reasonable care, the Individual Defendants knew or should have known that the Proxy is materially misleading and omits material information that is necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Proxy states that Cowen reviewed and discussed its financial analyses with the Board during various meetings including on February 19, 2020, and further states that the Board relied upon Cowen's financial analyses and fairness opinion in connection with approving the Proposed Transaction. The Individual Defendants knew or should have known that the material information identified above has been omitted from the Proxy,

15

rendering the sections of the Proxy identified above to be materially incomplete and misleading.

54. The misrepresentations and omissions in the Proxy are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff and the Class against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

55. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

56. The Individual Defendants acted as controlling persons of Adesto within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Adesto and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

57. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to the time the Proxy was filed with the SEC and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

16

58.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy.

59.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

60.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

61.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff demands injunctive relief in his favor and in favor of the Class and against the Defendants jointly and severally, as follows:

A.     Declaring that this action is properly maintainable as a class action and certifying Plaintiff as class representative and his counsel as class counsel;

17

B.      Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, until Defendants agree to disclose the material information identified above;

C.      Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy;

D.      In the event that the transaction is consummated prior to the entry of this Court's final judgment, rescinding it or awarding Plaintiff and the Class rescissory damages;

E.      Directing the Defendants to account to Plaintiff and the Class for all damages suffered as a result of their wrongdoing;

F.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

G.      Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: April 1, 2020                    **RIGRODSKY & LONG, P.A.**

                                        By:  */s/ Gina M. Serra*

**OF COUNSEL:**                              Brian D. Long (#4347)
                                             Gina M. Serra (#5387)
**ROWLEY LAW PLLC**                          300 Delaware Avenue, Suite 1220
Shane T. Rowley                              Wilmington, DE 19801
Danielle Rowland Lindahl                     Telephone: (302) 295-5310
50 Main Street, Suite 1000                   Facsimile: (302) 654-7530
White Plains, NY 10606                       Email: bdl@rl-legal.com
Telephone: (914) 400-1920                    Email: gms@rl-legal.com
Facsimile: (914) 301-3514

                                        *Attorneys for Plaintiff*

18